J-S46001-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.S. | : | No. 280 MDA 2014 |

Appeal from the Order Entered January 14, 2014,
In the Court of Common Pleas of Lackawanna County,
Orphans' Court, at No. A-61 2013.


BEFORE:  SHOGAN, LAZARUS and MUSMANNO, JJ

MEMORANDUM BY SHOGAN, J.:                    **FILED AUGUST 01, 2014**

Father, S.S., appeals from the order entered on January 14, 2014, that granted the petition filed by the Lackawanna County Office of Youth and Family Services ("OYFS") to involuntarily terminate Father's parental rights to his minor son, B.S. ("Child"), pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changed Child's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351.[1]  We affirm.

The trial court set forth the factual background and procedural history of this appeal as follows:

---

[1] On July 25, 2013, Child's mother, C.B. ("Mother"), signed a consent form voluntarily relinquishing her parental rights to Child.  N.T., 12/13/13, at 6. During the December 13, 2013 termination hearing, which Mother did not attend, the trial court confirmed her consent and terminated her parental rights to Child.  N.T., 12/13/13, 10-11.  At the termination hearing, the trial court noted that only the termination of Father's parental rights remained for the court to address.  N.T., 12/13/13, 12.  Mother does not challenge the termination of her parental rights to Child, nor is she a party to this appeal.

[Child] was born [in September of 2012]. (N.T. 12/13/2013 at pgs. 15, 46). He remained in the hospital for approximately one (1) month after birth to be monitored for symptoms of addiction and withdrawal, due to Mother's abuse of narcotics while pregnant. (*Id.* at pgs. 15, 17). While Mother and [Child] were both still in the hospital, Mother informed OYFS of Father's identity and provided OYFS with his phone number. (*Id.* at pg. 44[-45]). At this time, Mother also alluded to the possibility that Father was working in Binghamton, NY, but did not provide a name or address for Father's place of employment. (*Id.* at pgs. 25, 43[, 45]).

Mother notified Father of [Child's] birth, and Father formally acknowledged paternity of [Child]. (*Id.* at pgs. 37, 38). However, although hospital staff encouraged family members to visit [Child] and feed him while he was in the hospital to nurture him and help him grow, Father only visited [Child] once during this time. (*Id.* at pgs. 15, 45 & 46).

After being released from the hospital, on October 6, 2012, [Child] was placed into kinship foster care with Mother's uncle and aunt, [C.M. and S.M., "Foster Parents"], who previously adopted [Child's] two (2) siblings. (*Id.* at pgs. 14, 47). On October 22, 2012, OYFS attempted to contact Father to explore whether he was a placement source for [Child] by calling Father on the telephone, but Father never returned that phone call. (*Id.* at pgs. 45, 49).

Over the course of the next nine (9) months, from October of 2012 to July of 2013, OYFS, after being unable to make contact with Father, engaged in an exhaustive, diligent search to locate him. (*Id.* at pgs. 15-21, 49-62). Such efforts included sending letters, both certified and regular mail, to multiple addresses where Father was thought to have been living, reaching out to Mother's grandmother at an address where both Mother and Father had previously accepted mail, leaving voicemail messages for Father at numerous potential phone numbers, using [I]nternet search engines such as Accurint to locate Father based on his birth date and social security number, and attempting to track Father through the acknowledgement [sic] of paternity documents that he signed. (*Id.*). In July of 2013, OYFS learned that Father was incarcerated at the

Lackawanna County Prison on a parole or probation violation. (N.T. 12/13/2013 at pgs. 20-21).

Upon learning of Father's incarceration, an OYFS representative met with Father at the Lackawanna County Prison on July 23, 2013 to discuss [Child's] permanency. (*Id.* at pgs. 20-21). Specifically, the OYFS representative informed Father that, because of the length of time that [Child] had been in foster care, OYFS was seeking to terminate his parental rights to [Child]. (*Id.* at pg. 16). In addition, the OYFS representative informed Father that OYFS was also seeking to terminate his parental rights to [Child] because he had not had any contact with OYFS for approximately nine (9) months, had not completed any of the mandatory reunification services that OYFS required of him, and, most importantly, had not had any contact with [Child] for approximately nine (9) months. (*Id.*). Finally, the OYFS representative informed Father that, under Act 101, he could potentially remain a part of [Child's] life if he voluntarily relinquished his parental rights to [Child].[2] (N.T. 12/13/2013 at pg. 21).

> [2] Senate Bill 1360, known informally as Act 101, was enacted into law in 2010 by then Pennsylvania Governor Edward Rendell, and became effective in 2011. Bulletin, Dept. of Pub. Welf., Off. Of Child., Yth. & Fam., April 22, 2011. Act 101, as an amendment to 23 Pa.C.S.A. § 2101 et seq., also known as the Adoption Act, provides biological parents who voluntarily relinquish their parental rights to their children the potential ability to remain a part of their children's lives after the children have been adopted in certain circumstances. *Id*.

In response, Father refused to voluntarily relinquish his parental rights to [Child], but wrote to the OYFS representative at a later date, stating that he wished to remain a part of [Child's] life if an involuntary termination of his parental rights occurred. (*Id.* at pgs. 16, 21). However, Father never requested any sort of visitation or contact with [Child]. (*Id.* at pg. 21).

Trial Court Opinion, 4/1/14, at 1-3 (footnote in original).

On September 4, 2013, OYFS filed a petition to terminate Father's parental rights. The trial court held a hearing on the termination petition on December 13, 2013. At the hearing, OYFS presented the testimony of Megan Sporer, the OYFS caseworker assigned to the family; Sadie O'Day, the OYFS caseworker formerly assigned to the family prior to Ms. Sporer; and Kellie Valvano, the OYFS paralegal who conducted the diligent search for Father. N.T., 12/13/13, 4-5, 43-44, 55-56. At the conclusion of the hearing, the trial court terminated Father's parental rights on the record. On January 14, 2014, the trial court entered on its docket the order, dated December 30, 2013, terminating Father's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b), and changing Child's permanency goal to adoption pursuant to 42 Pa.C.S.A. § 6351.

On February 14, 2014, Father timely filed a notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2) and (b).[2] Father raises the following issues for our review:

A. Whether the trial court erred as a matter of law and/or manifestly abused its discretion in determining [OYFS] sustained its burden of proving the termination of Father's parental rights is warranted under sections 2511(a)(1), 2511(a)(2), 2511(a)(5) and/or 2511(a)(8) of the Adoption Act?

B. Even if this Court concludes [OYFS] established statutory grounds for the termination of Father's parental rights, whether the trial court nevertheless erred as a matter of law and/or

---

[2] We note that Father's notice of appeal and concise statement are time/date-stamped February 13, 2014.

manifestly abused its discretion in determining [OYFS] sustained its additional burden of proving the termination of Father's parental rights is in the best interests of [Child]?

Father's Brief at 5.[3]

In his first issue, Father argues that OYFS failed to establish the statutory factors necessary to terminate his parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), and/or (8) by clear and convincing evidence. Father initially argues that OYFS failed to sustain its burden of proof because OYFS waited until approximately one and one-half months after Child's birth to attempt to contact Father. At that time, OYFS did not discuss visitation or reunification goals with Father, but rather addressed Act 101 concerns. Father's Brief at 11.

We review an appeal from the termination of parental rights pursuant to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency

---

[3] We observe that Father subtly changed the language in his appellate brief from that used in his concise statement, but we find that he sufficiently preserved his issues for our review. Moreover, we also note that on December 30, 2013, the trial court changed the permanency goal for Child from reunification to adoption. N.T., 12/13/13, at 74; Trial Court Order, 12/30/13 (filed 1/14/14). Father waived any challenge to the goal change to adoption by his failure to raise the issue in his Statement of Questions Involved portion of his brief on appeal and in his concise statement. **Krebs v. United Refining Company of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by an appellate brief's statement of questions involved and concise statement is deemed waived).

cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. ***In re: R.J.T.***, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id***.; ***R.I.S.***, 36 A.3d [567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id***.; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id***.

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 650 A.2d 1064, 1066 (1994).

***In re Adoption of S.P.***, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, regarding clear and convincing evidence, we have explained the following:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we focus upon section 2511(a)(2).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on

the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

Our Supreme Court set forth our inquiry under section 2511(a)(2) as follows:

As stated above, § 2511(a)(2) provides statutory grounds for termination of parental rights where it is demonstrated by clear and convincing evidence that "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent." . . .

This Court has addressed incapacity sufficient for termination under § 2511(a)(2):

A decision to terminate parental rights, never to be made lightly or without a sense of compassion for the parent, can seldom be more difficult than when termination is based upon parental incapacity.  The legislature, however, in enacting the 1970 Adoption Act, concluded that a parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties.

*In re Adoption of J.J.*, 511 Pa. 590, 515 A.2d 883, 891 (1986) (quoting *In re: William L.*, 477 Pa. 322, 383 A.2d 1228, 1239 (1978)).

*In re Adoption of S.P.*, 47 A.3d at 827.

Moreover, we have stated the following:

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citations omitted).

Further, our Supreme Court instructed the following with respect to incarcerated parents:

[I]ncarceration is a factor, and indeed can be a determinative factor, in a court's conclusion that grounds for termination exist under § 2511(a)(2) where the repeated and continued incapacity of a parent due to incarceration has caused the child to be without essential parental care, control or subsistence and that the causes of the incapacity cannot or will not be remedied.

*In re Adoption of S.P.*, 47 A.3d at 828.

After re-visiting its decision in *In re: R.I.S.*, 36 A.3d 567 (Pa. 2011), regarding incarcerated parents, the Supreme Court stated the following:

[W]e now definitively hold that incarceration, while not a litmus test for termination, can be determinative of the question of whether a parent is incapable of providing "essential parental care, control or subsistence" and the length of the remaining confinement can be considered as highly relevant to whether "the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent," sufficient to provide grounds for termination pursuant to 23 Pa.C.S. § 2511(a)(2). *See e.g. Adoption of J.J.*, 515 A.2d at 891 ("[A] parent who is incapable of performing parental duties is just as parentally unfit as one who refuses to perform the duties."); [*In re:*] *E.A.P.*, 944 A.2d [79, 85 (Pa. Super. 2008)] (holding

-9-

termination under § 2511(a)(2) supported by mother's repeated incarcerations and failure to be present for child, which caused child to be without essential care and subsistence for most of her life and which cannot be remedied despite mother's compliance with various prison programs).

*In re Adoption of S.P.*, 47 A.3d at 830.

This Court has stated that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002). A parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous. *Id*. at 340.

The following portion of the trial court's opinion is relevant to our inquiry with regard to subsection 2511(a)(2):

> Next, under 23 Pa.C.S.A. § 2511(a)(2), OYFS has alleged that Father's repeated and continued incapacity, abuse, neglect, or refusal has caused [Child] to be without the essential parental care, control, or subsistence necessary for his physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect, or refusal cannot or will not be remedied by Father. 23 Pa.C.S.A. § 2511(a)(2). In the case at bar, [the trial court] finds that OYFS has again met its burden under this portion of the statute with respect to Father. Here, at the time of [Child's] birth, neither Mother nor Father had the ability to properly care for him. (N.T. 12/13/2013 at pgs. 44-46). Mother had no permanent residence to which [Child] could be released, and was still under suspicion of abusing narcotics, and Father was completely absent. (*Id.*) Thus, [Child] was without the essential parental care that was necessary for both his physical and mental well-being. 23 Pa.C.S.A. § 2511(a)(2); (N.T. 12/13/2013 at pgs. 44-46).

      Furthermore, as of December 13, 2013, the date of the TPR hearing, Father was still not prepared to properly care for [Child] because he was incarcerated. (N.T. 12/13/2013 at pg. 17). Therefore, although incarceration in and of itself is not enough to terminate a parent's rights to a child, Father's incarceration created a situation in which he was still not a placement source for [Child] at the time of the TPR hearing. *See In Re C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (holding that incarceration alone is insufficient to terminate parental rights).

      In addition, Father had not completed any of the mandatory reunification services OYFS required of him, which included undergoing mental health and drug and alcohol evaluations, as well as providing proof of a safe and stable home for [Child]. (*Id.* at pg. 16).

      Thus, the circumstances that existed at the time that [Child] was released from the hospital, in which he was without the proper parental care and control necessary for his physical and mental well-being, still existed at the time of the TPR hearing, and Father had not taken any remedial steps.

Trial Court Opinion, 4/1/14, at 6-7. Thus, the trial court found clear and convincing evidence in the record that Father's repeated and continued incapacity, abuse, neglect, or refusal to parent had caused Child to be without essential parental care, control, or subsistence necessary for Child's physical or mental well-being, and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Father. *Id*. at 7.

The evidence showed that OYFS contacted Father to offer him parenting resources, but he did not utilize the services. The evidence also demonstrated that Father's continued incapacity, abuse, neglect, or refusal

to parent could not or would not be remedied, despite OYFS's offer of reasonable efforts to assist in his reunification with Child.

Father's argument regarding section 2511(a)(2) essentially requests this Court to make credibility and weight determinations different from those of the trial court. While Father may claim to love Child, a parent's own feelings of love and affection for a child, alone, will not preclude termination of parental rights. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). We stated in *In re Z.P.*, a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." *Id*. at 1125. Rather, "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

Thus, after our careful review of the record in this matter, we discern that the trial court's factual, credibility and weight determinations are supported by competent evidence in the record. *In re Adoption of S.P.*, 47 A.3d at 826-827. The trial court properly considered the history of the case, including Father's failure to communicate with OYFS, his neglect as a parent to Child, plus his incarceration, and determined that Father would not remedy his failure to parent. Father cannot now shift the blame to OYFS for

his failure to parent Child. Accordingly, it is our conclusion that the trial court's determinations regarding section 2511(a)(2) are supported by sufficient, competent evidence in the record.

In his second issue, Father argues that the trial court failed to consider, under 42 Pa.C.S.A. § 2511(b), the effect of terminating his parental rights on the bond he has with Child, and/or the emotional needs and welfare of Child. Father asserts that, during the hearing, the trial court placed great weight on the apparent lack of a bond between Father and Child. Father contends that the record is devoid of any evidence or testimony concerning the effect that terminating Father's parental rights will have on Child. Father's Brief at 13.

Indeed, after we determine that the requirements of section 2511(a) are satisfied, we proceed to review whether the requirements of subsection (b) are satisfied. *In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). This Court has stated that the focus in terminating parental rights under section 2511(a) is on the parent. *Id*. at 1008. However, pursuant to section 2511(b), the focus is on the child. *Id*.

In reviewing the evidence in support of termination under section 2511(b), our Supreme Court stated the following:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare

-13-

of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

Here, the trial court found the following:

[U]nder the second prong of the analysis, terminating Father's parental rights to [Child] would best suit [Child's] needs and welfare. 23 Pa.C.S.A. §[ ] 2511. . . (b). In the case at bar, this [c]ourt finds that there is no significant bond between Father and [Child]. The only contact that Father has had with [Child] was on the single occasion when Father visited [Child] shortly after his birth while he was still in the hospital. (N.T. 12/13/2013 at pg. 15). When OYFS finally made contact with Father after tirelessly searching for him for nine (9) months, Father did not request any type of visitation or contact with [Child]. (*Id.* at pg. 21). And, during the TPR hearing, which was the only court proceeding that Father attended throughout the entire course of this case, this [c]ourt observed both [Child] and Father, who were present in the court room, and failed to acknowledge or engage one another, which this [c]ourt finds as evidence of no appreciable bond between Father and [Child]. (*Id.* at pg. 67).

Furthermore, [Child] has been placed with [Foster Parents] for over a year, since shortly after his birth. (*Id.* at pgs. 14, 47). [Foster Parents] have provided a loving and nurturing home for [Child], where he thrives and maintains a relationship with his two (2) older siblings. (*Id.* at pgs. 14, 47, & 71). Moreover, [Foster Parents] are ready, willing, and able to adopt [Child] and make him a permanent part of their family. (*Id.* at [pgs. 70-71). Thus, this [c]ourt finds that terminating Father's parental rights to [Child] and allowing [Foster Parents] to adopt him would clearly best suit his needs and well-being.

Trial Court Opinion, 4/1/14, at 9.

The trial court concluded that Father has not provided for Child's developmental, physical, and emotional needs and welfare. The trial court further concluded that Father would not be able to provide for Child's needs, particularly because of Father's failure to provide a stable and appropriate home for Child because of his incarceration, his refusal to perform any of the mandatory reunification services, and his refusal to maintain significant contact with Child. Trial Court Opinion, 4/1/14, at 8. Further, the trial court found that there is no bond between Child and Father. *Id*. at 9. The trial court determined that the termination of Father's parental rights would be in the best interests of the Child. *Id*. at 9-10.

As to the bond analysis, we have stated that, in conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). This Court has observed that no bond worth preserving is formed between a child and a natural parent where the child has been in foster care for most of the child's life, and the resulting bond with the natural parent is attenuated. *In re K.Z.S.*, 946 A.2d 753, 764 (Pa. Super. 2008). Here, Father failed to "exhibit [the] bilateral relationship which emanates from the parent['s] willingness to learn appropriate parenting . . . ." *In re K.K.R.S.*, 958 A.2d 529, 534 (Pa. Super. 2008). The

trial court properly found from the evidence that Father, because of his absence from Child's life, did not put himself in a position to develop a real bond with Child. Trial Court Opinion, 4/1/14, at 9.

Additionally, as part of its bonding analysis, the trial court appropriately examined Child's relationship with Foster Parents. **See In re: T.S.M.**, 71 A.3d at 267-268 (stating that existence of a bond attachment of a child to a parent will not necessarily result in the denial of a termination petition, and the court must consider whether the child has a bond with the foster parents). The trial court found that Child has a bond with Foster Parents, who are pre-adoptive, and who have served as his parents since his release from the hospital after birth. Moreover, Foster Parents have adopted Child's two older siblings.

As there is competent evidence in the record that supports the trial court's factual, credibility and weight assessments regarding Child's needs and welfare, and the absence of any bond with Father, we conclude that the trial court did not abuse its discretion as to section 2511(b). **In re Adoption of S.P.**, 47 A.3d at 826-827. Accordingly, we affirm the order which terminated Father's parental rights to Child and changed Child's permanency goal to adoption.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/1/2014